**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL H. STOCKWELL,**

                       **Plaintiff,**

    **vs.**                                                **1:12-CV-00826
                                                                  (MAD)**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

                       **Defendant.**
_____

**APPEARANCES:**                                 **OF COUNSEL:**

**BUCKLEY, MENDLESON LAW FIRM**     **IRA MENDLESON, III, ESQ.**
**29 Wards Lane
Albany, New York 12204**
_Attorneys for Plaintiff_

**SOCIAL SECURITY ADMINISTRATION**     **REBECCA H. ESTELLE, ESQ.**
**Office of Regional General Counsel
Region II
26 Federal Plaza- Room 3904
New York, New York 10278**
_Attorneys for Defendant_

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

Plaintiff Michael H. Stockwell ("plaintiff") brings the above-captioned action pursuant to 42 U.S.C. § 405(g) seeking review of the Social Security Commissioner's decision to deny his application for disability insurance benefits ("DIB").

## BACKGROUND

On February 17, 2010, plaintiff protectively filed an application DIB benefits.

(Administrative Transcript at p. 4-6).[1] Plaintiff was 30 years old at the time of the application with prior work experience as a truck driver and contractor. (T. 129). Plaintiff claimed that he was disabled, beginning on August 31, 2009, due to an injury sustained at work. Plaintiff alleged that he suffered the following impairments: bulging and protruding discs, bad ankles, dyslexia, anger disorder, hypertension, depression and asthma. (T. 127). On August 19, 2010, plaintiff's application was denied and plaintiff requested a hearing by an ALJ which was held on June 28, 2011. (T. 2, 8-9). On August 22, 2010, the ALJ issued a decision denying plaintiff's claim for benefits. The Appeals Council denied plaintiff's request for review making the ALJ's decision the final determination of the Commissioner. This action followed.

## DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311

---

[1] "(T. )" refers to pages of the administrative transcript, Dkt. No. 7.

2

F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

The ALJ found at step one that plaintiff had not engaged in substantial gainful activity since August 31, 2009 (T. 15). At step two, the ALJ concluded that plaintiff suffered from a back disorder which qualified as a "severe impairment" within the meaning of the Social Security Regulations (the "Regulations"). (T. 15). At the third step of the analysis, the ALJ determined that plaintiff's impairment did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. (T. 16). The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 CFR § 404.1567(b) and specifically found, "claimant has the ability to sit and stand or walk for six hours in an eight hour workday, lift twenty pounds occasionally and ten pounds frequently and occasionally push or pull using his upper and lower extremities".[2] (T. 16, 20). At step four, the ALJ concluded that

---

[2] The regulations define light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

plaintiff was not capable of performing any past relevant work. (T. 20). Relying on the medical-vocational guidelines ("the grids") set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff had the RFC to perform jobs existing in significant numbers in the national economy. (T. 20). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. (T. 21).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the ALJ failed to properly apply the treating physician rule with respect to plaintiff's primary care physician; (2) the ALJ failed to cite to objective medical evidence supporting the RFC analysis; (3) the ALJ failed to properly assess plaintiff's credibility; and (4) the matter should be remanded for a calculation of benefits. (Dkt. No. 10).

## I. Treating Physician Rule

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (2001); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). The ALJ is required to accord special evidentiary weight to the opinion of the treating physician, as long as the treating physician's opinion is supported by medically acceptable techniques, results from frequent examinations, and is supported by the administrative record. *Schnetzler v. Astrue*, 533 F.Supp.2d 272, 285 (E.D.N.Y. 2008). An ALJ may refuse to consider the treating physician's opinion controlling if he is able to set forth good reason for doing so. *Barnett v. Apfel*, 13 F. Supp.2d 312, 316 (N.D.N.Y. 1998).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

4

> (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2). The opinion of the treating physician is not afforded controlling weight where the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Stevens v. Barnhart*, 473 F.Supp.2d 357, 362 (N.D.N.Y. 2007); *see also Otts v. Comm'r of Social Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (an ALJ may reject an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record"). Similarly, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well-supported. 20 C.F.R. § 404.1527(d)(3), 416.927 (d)(3); *see also Stevens*, 473 F.Supp.2d at 362; *see also Cruz v. Barnhart*, 2006 WL 1228581. at *11 (S.D.N.Y. 2006) (holding that the Commissioner is not required to give controlling weight to a treating physician whose opinion is not supported by treating physician's own records). An opinion that is not supported by recent clinical evidence (no recent X-ray, CT scan or MRI) is not entitled to controlling weight. *See Ceballos v. Apfel*, 2001 WL 199410, at *9 (S.D.N.Y. 2001).

Plaintiff claims that the matter must be remanded because the ALJ failed to assign controlling weight to the opinions of plaintiff's primary care provider, William Parker, M.D. In December 2009, plaintiff sought treatment from Dr. Parker at Hudson Headwaters Health

5

Network, Moreau Family Health.[3] (T. 345). Plaintiff stated that he fell off of a truck at work in August 2009. Plaintiff claimed that he underwent an MRI that revealed a bulging disc and that he was scheduled to undergo a bone scan. Dr. Parker concluded that plaintiff was able to sit and stand for two hours in an eight hour workday. From February 2010 through February 2011, plaintiff had approximately ten follow up visits with Dr. Parker. During those visits, plaintiff continually complained of low back pain but reported no muscle aches, weakness, fatigue or weight gain. (T. 402-405, 429). Dr. Parker never prescribed or ordered any diagnostic testing. (T. 402). After examining plaintiff, Dr. Parker repeatedly noted that plaintiff was, "healthy, well developed and obese". (T. 405). Dr. Parker also indicated that plaintiff exhibited no acute distress or problems ambulating.[4] (T. 405, 410). Dr. Parker diagnosed plaintiff with back aches, lumbago and prescribed medication including Vicodin and Norco. (T. 405, 407). During plaintiff's March 2010 visit, Dr. Parker noted that plaintiff needed to stop smoking marijuana and that urine tests would be performed before any narcotics were prescribed.

Dr. Parker completed several forms for Workers' Compensation entitled "Doctor's Progress Report". (T. 402, 408, 412). In those reports, Dr. Parker consistently opined that plaintiff was 100% temporarily impaired due to severe pain and an inability to sit or ambulate for long periods of time. (T. 402, 408). The doctor also noted that plaintiff would benefit from vocational rehabilitation. (T. 408).

In February 2011, Dr. Parker completed a "Physical Capacities Evaluation". Dr. Parker noted that plaintiff could only sit or stand for ½ hour during an eight hour workday and that he could lift only five pounds. Dr. Parker opined that plaintiff could not work and found him to be

---

[3] Plaintiff previously treated at Moreau Health however, he did not establish as a patient with Dr. Parker until December 2009.

[4] In February 2010 and April 2010, plaintiff appeared for his office visit with a cane. (T. 410, 416).

in "marked pain". (T. 443).

On February 28, 2011, plaintiff had his last recorded visit with Dr. Parker. Plaintiff complained of joint pain but no muscle aches, weakness, fatigue, fever, chills or weight gain. Dr. Parker noted that plaintiff ambulated normally and while he exhibited a limited range of motion, his straight leg raising was negative and there was no tenderness present. (T. 449). Dr. Parker diagnosed plaintiff with lumbago.

The ALJ discussed Dr. Parker's examinations and summarized his office notes from 2010 and 2011. The ALJ also acknowledged Dr. Parker's February 2011 functional assessment and subsequent examination in February 2011. The ALJ concluded:

> Little weight is given to Dr. Parker's assessment dated February 2011, as it is inconsistent with examination findings as documented in his office visits prior to and subsequent to the date of his evaluation; further, the claimant testified that he is able to sit, stand, and walk for more than thirty minutes each in an eight-hour workday. (T. 19).

The ALJ also discussed Dr. Parker's assessment that plaintiff was 100% disabled and assigned "some weight" to that conclusion. The ALJ reasoned that this opinion was provided in the context of plaintiff's workers' compensation claim and his inability to return to his prior work which involved heavy lifting. (T. 19).

The ALJ correctly noted that the issue of plaintiff's disability is a determination reserved for the Commissioner. *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir.2003) (a treating physician's belief that a plaintiff is "totally disabled" is irrelevant since that determination is reserved for the Commissioner). Dr. Parker is not an orthopedic specialist and never prescribed any diagnostic testing or physical therapy. Dr. Parker's opinions regarding plaintiff's capabilities do not coincide with his office records or course of treatment. While Dr. Parker continually opined that plaintiff was totally disabled, he rendered that opinion after only one examination and

7

made only vague comments and opinions regarding plaintiff's functional limitations or restrictions in the forms for workers' compensation. These opinions are not expressed in his office notes and are not supported by objective, diagnostic testing. *See Overbaugh v. Astrue*, 2010 WL 1171203, at *5 (N.D.N.Y. 2010) (substantial evidence supported the ALJ's refusal to assign controlling weight to the treating physician's opinion because doctor opined, after only nine visits, that plaintiff was disabled); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (when a treating physician's opinions are inconsistent with even his own treatment notes, an ALJ may properly discount those opinions). Dr. Parker's own objective testing further belies his conclusions as he consistently found that plaintiff exhibited negative straight leg raising without acute distress and noted that plaintiff ambulated normally. *See Wynn v. Astrue*, 617 F.Supp.2d 177, 184 (W.D.N.Y.2009) (the significant limitations were not supported by objective assessments such as range of motion and strength tests).

More importantly, Dr. Parker's opinions are not supported by the bulk of the remaining medical record and objective medical evidence including x-rays, MRI films, EMG, CT scans and a bone scan. The ALJ noted the results of these studies in his decision. (T. 16). Further, a review of the medical record also reveals that Dr. Parker's conclusions are unsupported by plaintiff's other treating physicians, Drs. Afsar-Keshmiri, Sellig and Lawrence, as discussed *infra*.

Finally, plaintiff's hearing testimony contradicts Dr. Parker's assessment. Plaintiff testified that he could sit, stand or walk for an hour per day and when asked, plaintiff admitted that he is not "on his back" for 22 ½ hours a day. (T. 38). Plaintiff testified that he is able to drive and that he can attend his children's sporting events and practices, walk his dog and help with some chores like picking up clothes, washing dishes and make beds. (T. 35-37).

Although the Court is aware that deference should be accorded to Dr. Parker's opinions

pursuant to the treating physician rule, the ALJ articulated "good reasons" for failing to afford the opinions such weight. *See Bennett v. Astrue*, 2010 WL 3909530, at *6 (N.D.N.Y. 2010) (citation omitted). Accordingly, the matter will not be remanded for further consideration of this issue.

## II.     RFC

Residual functional capacity is:

> "what an individual can still do despite his or her limitations.... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96–8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)). In making the RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). The ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e). The burden of proof with respect to establishing RFC at the fourth step in the sequential disability analysis rests with the plaintiff. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

Plaintiff claims that the RFC is unsupported by substantial evidence because the ALJ failed to cite to objective medical evidence that supports the conclusion that plaintiff can perform light work. The Court has reviewed plaintiff's entire medical record and finds that the ALJ's analysis was thorough and that the RFC supported by the objective medical evidence.

9

In August 2009, an x-ray of plaintiff's lumbar spine was negative for fracture. (T. 250). In October 2009, plaintiff underwent an MRI of his lumbar spine which revealed "mild bulging". (T. 232). In November 2009, plaintiff treated with Dr. Afsar-Keshmiri for mild discomfort in his lower back. Dr. Keshmiri examined plaintiff and noted that he exhibited 5/5 motor strength, negative straight leg raising, no tenderness and no pain on range of motion testing. The doctor diagnosed plaintiff with low back pain and ordered a CT scan. (T. 253). On December 8, 2009, Dr. Robert Sellig examined plaintiff and noted that plaintiff's MRI and EMG films were "unremarkable". (T. 266). With respect to the EMG, Dr. Todd Jorgensen also noted, "I was unable to identify the neurogenic source for Michael's lower extremity symptomology. Electrodiagnostic testing failed to reveal any evidence of lumbar radiculopathy". (T. 255). Dr. Sellig indicated that a bone scan was "in order" and noted that, "if the bone scan is negative, I would state he could return to work with a temporary restriction of no lifting over 50 pounds". (T. 307).

In December 2009, plaintiff underwent a CT scan of his lumbar spine. Dr. Afsar-Keshmiri noted that the CT scan did not reveal any evidence of spondylosis. In January 2010, Dr. Afsar-Keshmiri reviewed the results of the bone scan and EMG with plaintiff noting that the results were negative and upon examination, Dr. Afsar-Keshmiri noted that plaintiff did not exhibit any pain on range of motion testing and that straight leg raising was negative. (T. 319).

In March 2010, plaintiff treated with Dr. James Lawrence, a spinal surgeon, who noted that plaintiff previously sought treatment with another spine surgeon, in the community, who did not feel that surgical intervention was necessary. (T. 353). Dr. Lawrence recommended a course of epidural injections. In June 2010, plaintiff had a follow up visit with Dr. Lawrence who noted that plaintiff demonstrated a full range of motion in his knees and hips. Dr. Lawrence referred

plaintiff to another doctor for injections and indicated that he had nothing to offer plaintiff in terms of surgery. (T. 385).

The ALJ afforded "some weight" to Dr. Sellig and Jorgensen's opinions. Plaintiff does not present any argument or disagreement with respect to the weight that the ALJ afforded to those opinions. Moreover, the ALJ adequately explained his reasoning and cited to the relevant portions of the medical record supporting that assessment. "[T]he ALJ may 'rely not only on what the record says, but also on what the record does not say' ". *See Walters v. Astrue,* 2013 WL 1755727, at* 4 -5 (W.D.N.Y. 2013) (citing *Dumas v. Schweiker,* 712 F.2d 1545, 1553 (2d Cir.1983) (because the plaintiff bears the burden of proving his RFC, the ALJ could reasonably rely on the lack of evidence that would preclude a range of light work with additional exertional limitations)). Here, none of plaintiff's treating physicians opined that plaintiff could not perform light work. The ALJ performed an extensive analysis of plaintiff's treatment with orthopedic specialists including Dr. Armin Afsar-Keshmiri (spinal surgeon) and cited to the diagnostic testing including CAT scans, MRI films, a bone scan and x-rays. Upon a review of the entire record, the Court finds that the ALJ's RFC assessment that plaintiff can perform "light work" is supported by the bulk of the objective medical evidence and testing.

### III. Credibility

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily

activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her symptoms are consistent with the objective medical and other evidence. *See* SSR 96–7p, 1996 WL 374186, at *2 (SSA 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record. SSR 96–7p, 1996 WL 274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Saxon v. Astrue*, 781 F.Supp.2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence. *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y.1998) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987) (citations omitted)). It is insufficient for an ALJ to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible". Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *4 (SSA July 2, 1996). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *Howe–Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y.2007). The ALJ must also consider whether "good

12

reasons" exist for failing to follow the prescribed treatment, e.g. religious objections, lack of ability to pay, significant risks associated with treatment. SSR 82–59; *see also Grubb v. Apfel*, 2003 WL 23009266, at *4–*8 (S.D.N.Y. 2003). . Absent such findings, a remand is required. *Miller v. Shalala*, 894 F. Supp. 73, 75 (N.D.N.Y. 1995); *see also Knapp v. Apfel*, 11 F. Supp. 2d 235, 238 (N.D.N.Y. 1998) ("a finding that the Commissioner has failed to specify the basis for his conclusions is [a] compelling cause for remand").

Plaintiff claims that the ALJ's credibility assessment is flawed because the ALJ failed to analyze the medical evidence, in detail. Further, plaintiff contends that the ALJ did not properly discuss the seven factors enumerated in 404.1529(c)(3) .

On the issue of credibility, the ALJ found:

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual capacity assessment and with the medical evidence as discussed below. (T. 17).

The ALJ also discussed plaintiff's testimony and concluded:

> The claimant reported an ability to perform a variety of basic activities of daily living and that he can maintain a regular routine. The claimant is able to drive an automobile and reported that he attends church and his children's sports events. The claimant's treatment and modalities included medication, heat, and pool therapy, which the claimant described as helpful in relieving his symptoms, and treating source records do not show that surgical intervention is indicated. (T. 20).

Plaintiff argues that the ALJ "undertakes a brief discussion of the claimant's testimony at the bottom of page four and the top of page five of his decision". However, the Court has thoroughly reviewed the decision and notes that the ALJ cited to plaintiff's testimony throughout the decision. For example, the ALJ discussed plaintiff's testimony as it related to his alleged

13

mental impairments and noted that plaintiff testified about being victimized sexually as a child and experiencing flashbacks. (T. 15). The ALJ noted that plaintiff took Celexa for depression.

The ALJ also cited to plaintiff's testimony related to his subjective complaints of pain and symptoms, precipitating factors, medications, other treatment and activities of daily living:

> The claimant testified that he can't work due to mobility problems, soreness in his lower back that radiates to his legs, and lack of physical stamina. He described daily, sharp pain that is aggravated by sitting, standing, laying down, or walking for long periods of time. He testified that heat and medications are helpful in relieving his back pain, and that pool therapy is helpful. He stated that cold weather makes his symptoms worse. The claimant stated that he spends a lot of time on his back during the day, but that he is able to sit, stand or walk for up to one hour each in an eight hour workday. The claimant testified that he can prepare meals, do dishes, make beds, pick up clothes and help with laundry. He stated that he can shop but that he does not carry groceries. He stated that he will read books and newspapers, watch television, and walk his dogs. (T. 16-17).

Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ correctly applied the standard, enumerated in 20 C.F. R. § 404.1529(c)(3) (i)-(iv), in assessing plaintiff's credibility. As noted in Part I, the ALJ discussed plaintiff's daily activities and his subjective complaints, including the frequency and intensity of his symptoms and the lack of support, in the record, for those complaints. Moreover, as discussed in Parts I and II, the ALJ performed a detailed summary and analysis of the medical record and plaintiff's treatment. "To the extent the ALJ's RFC findings rested on his determination of plaintiff's credibility, it was 'within the discretion of the [Commissioner] to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology' ". *Cohen v. Astrue*, 2011 WL 2565659, at *22 (S.D.N.Y. 2011) (citations omitted). Taken as a whole, the record supports the ALJ's determination that plaintiff was not entirely credible. The Court finds that the ALJ employed the proper legal

standards in assessing the credibility of plaintiff's complaints of pain and adequately specified the reasons for discrediting plaintiff's statements.

**IV.     Remand for Calculation of Benefits**

The Court has determined that the ALJ's decision is supported by substantial evidence. Therefore, remand for, any purpose, is not warranted.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED** that plaintiff's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated:  August 23, 2013
        Albany, New York

Mae A. D'Agostino
U.S. District Judge